Filed 1/25/21  Vigil v. Applied Nutrition CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| RYAN VIGIL,<br><br>　　Plaintiff and Appellant,<br><br>　　　v.<br><br>APPLIED NUTRITION, INC., et al.,<br><br>　　Defendants and Respondents. | B292530<br><br>(Los Angeles County<br>Super. Ct. No. BC560924) |

　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Carolyn Kuhl, Judge.  Affirmed.

　　　Patterson Law Group and James R. Patterson; Carlson Lynch Kilpela & Carpenter and Todd D. Carpenter for Plaintiff and Appellant.

　　　Call & Jensen, Mark L. Eisenhut and William P. Cole for Defendants and Respondents.

————————————

# INTRODUCTION

After excluding the testimony of plaintiff Ryan Vigil's retained expert witness, the court granted defendant Applied Nutrition, Inc.'s summary judgment motion. Vigil appeals the evidentiary ruling and the grant of summary judgment. We affirm the court's order excluding the expert witness testimony and the judgment.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

A. *Vigil's Allegations*

On October 17, 2014, Vigil filed an action against Applied Nutrition on behalf of himself and all others similarly situated in which he asserted causes of action for violating California's Unfair Competition Law (Bus. & Prof. Code, § 17200, et seq.) and Consumer Legal Remedies Act (Civ. Code, § 1750, et seq.) and for breach of express warranty. He filed a first amended complaint on December 16, 2014 to which he added an exhibit and renumbered certain of the paragraphs in the initial complaint.

Vigil alleged he purchased Libido-Max in July 2014, based on Applied Nutrition's claim Libido-Max would provide the sexual health and performance benefits Applied Nutrition

---

[1] The lawsuit involves Applied Nutrition's product, Libido-Max, a dietary supplement. The parties agreed Libido-Max's formula is confidential and proprietary and any information concerning it and the amounts of each ingredient in the product should not be publicly disclosed. Therefore, several of the parties' pleadings were filed under seal. The factual summary provided below is taken from redacted portions of the parties' pleadings and from materials that were not deemed proprietary and confidential in this action.

advertised. He asserted the product's label indicated the product "enhances drive & desire," "increases blood flow," and leads to "longer performance & stamina." Vigil claimed Libido-Max did not work as advertised and, therefore, Applied Nutrition engaged in false advertising, misrepresented and omitted material facts, and breached express warranties by not providing a product that produced the advertised benefits.

B. *Applied Nutrition's Motion for Summary Judgment and Objections to Expert Witness Testimony*

On July 14, 2017, Applied Nutrition moved for summary judgment.[2] Counsel for Applied Nutrition attached to his declaration in support of the motion the four studies Vigil referenced in his first amended complaint and a multitude of other published clinical studies that were produced in discovery by the parties in the litigation concerning some of the ingredients found in Libido-Max, such as L-arginine, lepidium meyenii (maca), ashwagandha, Dimethylglycine (DMG), yohimbe, CDP-choline, and black pepper.[3] In the motion, Applied Nutrition focused on the four studies Vigil noted in its complaint. In doing so, Applied Nutrition established that some of the ingredients in

---

[2] The pleading Applied Nutrition filed was styled an "amended" motion for summary judgment or, in the alternative, summary adjudication. To the extent Applied Nutrition filed an initial motion for summary judgment, it was not included as a part of the appellate record.

[3] Libido-Max also contains tribulus extract, L-Tyrosine, nicotinamide adenine dinucleotide (NADH), and BioPerine Complex (consisting of ginger extract, long pepper extract, and BioPerine black pepper extract).

Libido-Max, such as maca, have positive effects on sexual health and function; Vigil did not present studies that addressed several of the ingredients in Libido-Max; and there was an absence of evidence to show Libido-Max does not work.

In support of the motion, Applied Nutrition also submitted portions of Vigil's deposition testimony and written responses to discovery in which Vigil stated he and his girlfriend had sex three to four times a week; they had a "very steady, happy sex life" but they were "[l]ooking to go above and beyond"; and he took Libido-Max to enhance his desire to engage in intercourse and to improve his sexual performance and enjoyment by increasing the firmness of his erection and his stamina. Attached to its counsel's declaration in support of the motion, Applied Nutrition also presented what were purported to be positive testimonials from several customers who stated they had used Libido-Max for many years and were satisfied with the results.

In opposing the motion, Vigil pointed to his deposition testimony wherein he asserted he reasonably relied upon Applied Nutrition's representations that Libido-Max would increase and enhance his sexual libido and improve his sexual performance and enjoyment by increasing the firmness of his erections and his stamina. Although Vigil took the product for two to three weeks as directed, he claimed he never experienced the advertised benefits.

In support of his opposition, Vigil filed excerpts from the deposition testimony of Mark Green, Applied Nutrition's Chief Financial Officer, in which Green admitted Applied Nutrition intended to communicate to consumers through Libido-Max's product packaging and labeling they could expect to extend the length of time they would be able to have sex. Vigil also

submitted the declaration of his retained expert, Dr. Bill J. Gurley, Ph.D. He pointed to Dr. Gurley's opinion that clinical studies revealed the ingredients in Libido-Max are either clinically ineffective or potentially effective but only at substantially larger doses than those found in the Libido-Max formula.

Vigil did not object to the declaration submitted by Applied Nutrition's counsel or to the clinical studies and testimonials that were attached to it as exhibits.

### 1. *Dr. Gurley's Initial Expert Report*

Dr. Gurley is a pharmacologist, clinical researcher, and Professor of Pharmaceutical Sciences and director of the Clinical Pharmacokinetics Research Laboratory at the University of Arkansas for Medical Sciences, College of Pharmacy. He is also a member of the United States Pharmacopeia's Expert Panel on Dietary Supplements. Dr. Gurley prepared a report on Vigil's behalf in which he evaluated clinical trials regarding several of Libido-Max's individual ingredients—L-arginine, ashwagandha, epimedium extract, tribulus terrestris, yohimbe, Asian ginseng, and maca powder—but not all of them. He noted that, although several of the individual ingredients in Libido-Max had undergone clinical trials to assess their therapeutic efficacy in treating erectile dysfunction or loss of libido, no clinical trials had been conducted to assess the effectiveness of the Libido-Max formulation itself. Although Dr. Gurley referred to studies in his report, he did not attach any of them to the report.

Dr. Gurley concluded the doses of L-arginine, ashwagandha, and epimedium, respectively, in Libido-Max made no contribution, were irrelevant, and were inconsequential to Libido-Max's advertised claims; any improvements of sexual

5

function that tribulus terrestris provides do not manifest themselves acutely in Libido-Max; as a single ingredient, yohimbe's efficacy is questionable, and it has been banned in many countries because of its potential serious health effects ; the long-term side effects of Asian ginseng are largely unknown and, in any event, the quantity of the ingredient in Libido-Max is not sufficient to produce any noticeable aphrodisiacal effect; and, similarly, there is limited evidence that maca improves any element of male sexual health, and it is unlikely the maca dose in Libido-Max has any noticeable or beneficial effects. Dr. Gurley offered that no clinical trials had been conducted to assess the effectiveness of DMG, cayenne powder, L-tyrosine, or CDP-choline. As for the BioPerine complex, Dr. Gurley stated it remains to be determined to what extent it improves the absorption into and the use by the body (bioavailability) of the active ingredients in the Libido-Max formulation.

Dr. Gurley then declared Applied Nutrition's claims that Libido-Max enhances male sexual "'performance and stamina,' 'increase[s] blood flow' to the penis, and heightens sexual 'drive and desire' or 'boost[s] pleasure and vitality,' are inaccurate and not supported by the scientific evidence. Such statements, in my opinion, are misleading to the consumer." On that basis, Dr. Gurley opined, with "a reasonable degree of scientific certainty," Libido-Max would not work as advertised for any consumer regardless of his or her overall health, weight, sex, or ethnicity.

2. *Applied Nutrition Challenges Dr. Gurley's Report*

On November 13, 2017, in its reply brief in support of its summary judgment motion, Applied Nutrition argued that Dr.

6

Gurley's expert report and testimony did not create triable issues. It pointed to certain admissions Dr. Gurley made in his deposition testimony. For example, Applied Nutrition argued Dr. Gurley did not study or analyze any of the dosage form (tablet, capsule, or liquid gel) performance qualities of Libido-Max; he could not say whether or not the BioPerine complex in Libido-Max enhances the bioavailability of any of the ingredients in Libido-Max; he did not know whether the combined ingredients in Libido-Max have synergistic or additive effects, although he acknowledged it is possible they do; he noted none of Libido-Max's product label claims has been scientifically invalidated by any clinical study; and, because there are no clinical studies of Libido-Max, he stated there is no knowledge of its efficacy.

Applied Nutrition also argued Vigil's purported experience with Libido-Max did not create any triable issue because his subjective assertion that the product did not work for him lacked foundation. For example, although Vigil professed to taking Libido-Max to have more stamina and firmer erections while having sex, he never timed his sexual intercourse while he took Libido-Max, and he did not know whether the blood flow to his penis increased.

On December 6, 2017, Vigil filed a supplemental declaration submitted by Dr. Gurley. Attached to that declaration were the same curriculum vitae and expert report Vigil had filed earlier and the clinical studies Dr. Gurley indicated he had relied upon to form his expert opinion.

7

### 3. *Applied Nutrition Objects to the Admissibility of Dr. Gurley's Report Under Evidence Code Section 801*

At the hearing on the summary judgment motion on January 9, 2018, Applied Nutrition objected to the admissibility of Dr. Gurley's expert opinion under Evidence Code section 801 and pursuant to *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747 (*Sargon*).  It argued the court as a gatekeeper must consider whether Dr. Gurley's expert opinion is sufficiently supported by reliable evidentiary standards.  Vigil countered that Dr. Gurley's opinion was based on sound pharmacological scientific principles.  He conceded, however, Dr. Gurley had to rely on scientific evidence to prove falsity and that scientific evidence must bear some relationship to his ultimate conclusions.

The court ordered briefing directed to the applicability of the *Sargon* standards to the case.

In his supplemental brief, Vigil maintained Dr. Gurley based his opinion on the pharmacological principle of dose response effect—"a drug or other pharmacological ingredient will become exponentially less responsive, even to the point of demonstrating no impact, on the human body as the quantity of the dose decreases."  Therefore, Dr. Gurley opined, the amount of ingredients in the Libido-Max formulation could not achieve the advertised claims of the product's sexual health benefits.  Additionally, in a second supplemental declaration, Dr. Gurley expounded on the dose response effect and how that scientific concept supported his conclusion Libido-Max was ineffective, but he did not specify where any of the ingredients in Libido-Max fell on that dose- response curve.  Dr. Gurley stated the low

8

quantities of the ingredients in the Libido-Max formulation, coupled with poor bioavailability, made Libido-Max unable to achieve the sexual health benefits advertised on the Libido-Max label.

In its supplemental brief, Applied Nutrition repeated its contention that Dr. Gurley's opinion was based on conjecture and speculation. In discussing several of the studies upon which Dr. Gurley relied, it argued the analytical gap between the data in the studies and the opinion Dr. Gurley offered was "simply too great."

4.      *The Court's Order Sustaining Evidentiary Objections and Ruling on Summary Judgment*

After the second round of supplemental briefing, the trial court held another hearing on March 22, 2018. Applied Nutrition argued Dr. Gurley analyzed 70 percent of the active ingredients in Libido-Max and then made an unscientific and illogical leap to say all of the ingredients in Libido-Max combined have no efficacy based on the claims made on its label. It added that the clinical studies Dr. Gurley considered involved a population of individuals who had some sexual health issue, such as erectile dysfunction, infertility, or impotence, not a population of healthy individuals (as Vigil claimed to be), and the label on Libido-Max clearly stated it was not designed to cure or address any sexual dysfunction problem.

Vigil countered by arguing Dr. Gurley's research and the specific studies upon which he relied in finding that 70 to 80 percent of the ingredients in Libido-Max do not work are relevant information for the trier of fact.

9

The trial court issued its order on June 18, 2018, sustaining Applied Nutrition's evidentiary objections and granting summary judgment in Applied Nutrition's favor. In its detailed written order, the court found Applied Nutrition had "met its burden of showing evidence sufficient to shift the burden to [Vigil] on a Motion for Summary Judgment." It noted Vigil could not prevail in this case unless he presented evidence that Applied Nutrition's advertising regarding Libido-Max was false or misleading. The court added that Vigil initially offered Dr. Gurley's declaration as evidence to demonstrate a prima facie case on the issue of falsity. It then discussed Dr. Gurley's conclusions and ruled they were inadmissible under Evidence Code section 801 and *Sargon*.

The court declared Dr. Gurley's opinion did not flow in a "reasoned chain of logic" from the materials on which he relied because of Dr. Gurley's use of and reliance on dose-response curves. The court found "[t]he existence of a dose-response curve is basic and undisputed. But without any information about where the response stops or about the pattern of drop-off in response when dosages are lowered (information from which a dose-response curve could be drawn to extrapolate estimated effects at lower dosages), the materials reviewed by Dr. Gurley do not logically support his conclusions."

The court also noted Dr. Gurley did not address approximately 30 percent (by weight) of the ingredients in Libido-Max because there were no scientific studies with respect to the efficacy of those ingredients; the literature regarding yohimbe did not establish a dosage below which that ingredient was ineffective, and Dr. Gurley did not cite to a study that set a lower limit for the efficacy of yohimbe; Dr. Gurley did not properly consider the synergies of the constituent ingredients in opining

10

on their efficacy; and Dr. Gurley did not properly consider the effect of BioPerine Complex on the overall efficacy of Libido-Max. The court also found Dr. Gurley's conclusions about the lack of efficacy of other ingredients were speculative, and Dr. Gurley did not consider the potential effects of combined ingredients, even though Dr. Gurley cited studies that recognized the potential for enhanced effects.

Given the exclusion of Dr. Gurley's expert testimony, the court ruled that Vigil had not met his burden and granted Applied Nutrition's motion for summary judgment.

On June 26, 2018, the judgment was entered, and counsel for Applied Nutrition served Vigil with notice of entry of judgment on July 10, 2018. Vigil filed his appeal on September 7, 2018.

## DISCUSSION

### A. *The Court Did Not Err By Excluding Dr. Gurley's Expert Witness Testimony*

Vigil contends the trial court misapplied Evidence Code section 801 and *Sargon* and thereby overstepped its proper role as a gatekeeper as to the admissibility of expert opinion.

Applied Nutrition counters by arguing Dr. Gurley did not perform any scientific testing of Libido-Max, its individual ingredients, or its combination of ingredients. It adds that Dr. Gurley based his opinion on reviewing studies performed by others on some, but not all, of the individual ingredients in Libido-Max, but he reviewed no studies that concerned Libido-Max itself, any combination of ingredients equivalent or similar to Libido-Max, several of the individual functional ingredients of Libido-Max, individual ingredients at the quantity levels in

11

Libido-Max, the impact of BioPerine, which is an important bio-availability enhancer in Libido-Max, and anything addressing the efficacy of Libido-Max.

### 1. *Applicable Law and Standard of Review*

Pursuant to Evidence Code section 801, an expert's opinion is admissible if it is "(a) [r]elated to a subject that is sufficiently beyond the common experience that the opinion of an expert would assist the trier of fact; and (b) [b]ased on matter (including his special knowledge, skill, experience, training and education) . . . that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion." (Evid. Code, § 801.) Evidence Code section 802 provides, in relevant part, "A witness testifying in the form of an opinion may state . . . the reasons for his opinion and the matter . . . upon which it is based." (Evid. Code, § 802.) Therefore, while "Evidence Code section 801 governs judicial review of the *type* of matter; Evidence Code section 802 governs judicial review of the *reasons* for the opinion." (*Sargon*, *supra*, 55 Cal.4th at p.771, italics in original.)

The "[c]ourts are split regarding the proper standard of review for the trial court's evidentiary rulings in connection with motions for summary judgment and summary adjudication" (*Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 368; accord, *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535 (*Reid*).) Whether the trial court's evidentiary ruling in this matter is reviewed under a de novo or abuse of discretion standard, the trial court did not commit reversible error.

12

## 2. *The Trial Court Did Not Misapply Evidence Code Sections 801 and 802 or* Sargon

The court allowed the parties to submit supplemental briefing on the issue of the admissibility of Dr. Gurley's testimony and to argue the matter on two occasions. After giving Vigil ample opportunities to explain the basis of Dr. Gurley's opinion, the court determined his opinion was too speculative and that there were wide analytical gaps between the conclusions he reached and the materials upon which he relied. We find no error in the court's ruling.

The standard for admissibility of expert opinion testimony in California is described in *Sargon*. In *Sargon*, the California Supreme Court held that under Evidence Code sections 801 and 802, the trial court is a gatekeeper to exclude expert opinion testimony that is "(1) based on matter of a type on which an expert may not reasonably rely, (2) based on reasons unsupported by the material on which the expert relies, or (3) speculative." (*Sargon, supra,* 55 Cal.4th at pp. 771-772; *Apple Inc. v. Superior Court* (2018) 19 Cal.App.5th 1101, 1118). "This means that a court may inquire into, not only the type of material on which an expert relies, but also whether that material actually supports the expert's reasoning. 'A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" (*Sargon, supra,* 55 Cal.4th at p. 771.)

In the instant case, the court applied these principles in determining Dr. Gurley's testimony did not pass muster. We conclude the court properly fulfilled its role as a gatekeeper, as dictated by *Sargon*.

Notably, in his deposition testimony, Dr. Gurley admitted that because there are no case studies of Libido-Max itself, "[w]e

13

don't know what the outcome of Libido-Max is, period. There is [*sic*] no clinical studies of Libido-Max. We have no idea what its efficacy is, safety, anything." In his expert report, Dr. Gurley also admitted he neither had nor reviewed any data that concerned several of the individual ingredients in Libido-Max. For example, it was not disputed that NADH, L-Tyrosine, DMG, and CDP-Choline are ingredients in Libido-Max about which Dr. Gurley either offered no opinion or admitted no clinical trials had been conducted to assess their effectiveness in treating sexual or erectile dysfunction. Even so, Dr. Gurley opined that CDP-Choline has no beneficial impact on men's sexual health based on nothing more than his understanding there is no data on whether it does or doesn't provide such benefits.

As the court noted, Dr. Gurley's rationale for declaring that a particular amount of an ingredient was too low to have a positive effect was based on "no reasoning other than the fact that a positive effect was determined to exist at a higher level." Dr. Gurley provided no scientific support for his conclusion the ingredients proven to be effective at higher doses would not be effective at lower levels. Therefore, while a pharmacological substance's dosage changes and the biologic response may also change in some way, the court ruled "without any information about where the response stops or about the pattern of drop-off in response when dosages are lowered (information from which a dose-response curve could be drawn to extrapolate estimated effects at lower dosages), the materials reviewed by Dr. Gurley do not logically support his conclusions."

Dr. Gurley did not review any studies that concerned any combination of the ingredients in Libido-Max. He also did not review any studies relating to the impact of BioPerine, the bio-

14

availability enhancer in Libido-Max. However, he admitted BioPerine can increase bioavailability and stated it remains to be determined how much BioPerine may boost Libido-Max's other ingredients.

Dr. Gurley admitted several of the individual ingredients in Libido-Max—L-Arginine, ashwagandha, Tribulus terrestris, and yohimbe— were clinically shown to benefit male sexual performance regarding blood flow, erectile function, or sexual desire. These were primarily clinical studies involving men who experienced erectile or sexual dysfunction, conditions which Vigil indicated he did not have, and Dr. Gurley agreed Libido-Max is a dietary supplement that was not advertised as a product that treated such conditions. In fact, at his deposition, Dr. Gurley did not identify any study that examined the sexual health impacts of Libido-Max's ingredients on healthy persons.

Dr. Gurley also admitted he did not know whether the combined ingredients in Libido-Max have synergistic effects, but he conceded they may. In fact, Dr. Gurley admitted that in one of the studies upon which he relied combining L-Arginine and yohimbine caused a greater increase in penile blood flow than when the ingredients were administered separately. Yet, when he was asked if he an opinion as to the lowest dose of L-Arginine and yohimbine that could be combined to increase penile blood flow, Dr. Gurley could not offer an opinion concerning where the dose-response would cut off.

Finally, at his deposition, in response to the question as to whether the way to determine with scientific certainty what the impact of a multi-ingredient dietary supplement like Libido-Max is on the human body is a randomized clinical trial, Dr. Gurley stated "that's the gold standard for establishing efficacy for any

15

product or dietary supplement." Dr. Gurley added he was also not aware of any product label claims concerning Libido-Max having been scientifically invalidated by any clinical study; therefore, there were no studies that had validated Libido-Max's inefficacy, and he had not independently conducted any such studies.

Therefore, after examining the materials upon which Dr. Gurley relied, the court properly determined they did not logically support his reasoning as there was no "reasoned chain of logic" between the studies he reviewed and his ultimate conclusions.

Even though there was support in some of the studies Dr. Gurley reviewed for the proposition that certain ingredients in Libido-Max had positive effects at doses that were higher than those found in Libido-Max, Dr. Gurley's conclusion that these ingredients would not be effective at lower dosages was a leap too far. (*Sargon, supra,* 55 Cal.4th at p. 772.)

Because Dr. Gurley offered conclusions that were not supported by the material upon which he relied, we conclude the court fulfilled its gatekeeper role by excluding his testimony. In doing so, the court provided a detailed ruling after conducting hearings, permitting the parties to provide supplemental briefing on the Evidence Code sections 801 and 802 and *Sargon* issues, reviewing and considering the clinical studies and discovery responses put before it, and dissecting the expert opinion Dr. Gurley offered.[4]

---

[4] Portions of Dr. Gurley's declarations contained factual assertions that were not objectionable. For example, these included his experience and qualifications, statements concerning

16

Given these circumstances, whether a de novo or abuse of discretion standard is applied on review, the trial court did not err in excluding Dr. Gurley's testimony.

### B. The Court Did Not Commit Reversible Error By Granting Defendant's Motion for Summary Judgment

Vigil argues there were triable issues of material fact as to each of his statutory claims.

### 1. Applicable Law and Standard of Review

The party moving for summary judgment bears the burden of persuasion that there are no triable issues of material fact, and it is thereby entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) The motion for summary judgment must be "supported by affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken." (Code Civ. Proc., § 437c, subd. (b)(1).) When the prevailing party carries its burden and makes a prima facie showing of the nonexistence of a triable issue of material fact, the burden then shifts to the non-prevailing party to present evidence showing the

---

what was represented in the clinical studies he referenced about certain ingredients, and an explanation of how a dose-response curve works. But none of that was relevant in supporting Dr. Gurley's conclusion that Libido-Max would not work. By so heavily relying on the dose-curve analysis and not addressing specifically where certain ingredients in Libido-Max fall on that curve, Dr. Gurley's opinion did not flow in a "reasoned chain of logic" from the materials on which he relied. Therefore, the court did not err by excluding the entirety of the declarations.

17

existence of a triable issue of one or more material facts. (*Id.*, § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at pp. 849-850.) Responsive evidence that gives rise to no more than mere speculation cannot be regarded as substantial, and such evidence is insufficient to establish a triable issue of material fact. (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163.)

With respect to a false advertising claim, in order for plaintiff to prevail, he or she must put forth admissible, affirmative evidence of the challenged advertising's falsity. (*National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.* (2003) 107 Cal.App.4th 1336, 1345-1346 (*King Bio*); see also *Johns v. Bayer Corp.*, (S.D. Cal. April 10, 2013) 2013 WL 1498965, at *36 [in the context of a summary judgment motion, court found plaintiff, who was seeking relief for false advertising, had not set forth "affirmative scientific evidence" that the labeling claims at issue were false; court, therefore, granted summary judgment for defendant].)

Our review of a grant of summary judgment is de novo. (*Samara v. Matar* (2018) 5 Cal.5th 322, 338.) We consider all evidence set forth in the moving and opposing papers, except that to which objections were made and sustained. (Code Civ. Proc., § 437c, subd. (c); *Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)

> 2. *The Court Properly Granted Applied Nutrition's Motion for Summary Judgment*
>
> a. *Applied Nutrition Effectively Shifted the Burden on Summary Judgment to Vigil*

As the party moving for summary judgment, Applied Nutrition "bears an initial burden of production to make a prima

facie showing of the nonexistence of any triable issue of material fact; if [it] carries [its] burden of production, [Applied Nutrition] causes a shift, and [Vigil] is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar*, *supra*, 25 Cal.4th at p. 850; Code Civ. Proc., § 437c, subd. (p)(2).)

In his written opposition to Applied Nutrition's summary judgment motion, Vigil stated "[d]efendant has not met its initial burden to demonstrate that there is no triable issue." In his opening brief on appeal, Vigil also asserted Applied Nutrition "has not made the requisite prima facie showing of the nonexistence of triable facts," and failed to submit expert testimony to counter his contention that Libido-Max is scientifically unable to deliver its claimed benefits. Vigil does not fully address or argue whether Applied Nutrition had satisfied its burden of production so as to shift the burden to him. Rather, he argues that triable issues of material fact remained to be resolved.

As explained above, Applied Nutrition supported its motion for summary judgment with many clinical studies the parties exchanged in discovery, Vigil's deposition testimony, responses Vigil provided to discovery requests, Dr. Gurley's deposition testimony, and testimonials from several of its customers who had used Libido-Max. Vigil did not object to the admissibility of any of the evidence Applied Nutrition submitted to the court. A party must make a timely and proper objection or motion to exclude or strike evidence to preserve the right to challenge on appeal the erroneous admission of evidence. (See Evid. Code, § 353, subd. (a) [judgment not to be reversed based on erroneous admission of evidence unless '[t]here appears of record an

19

objection to or motion to exclude or strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion"]; *Duronset v. Kamps* (2012) 203 Cal.App.4th 717, 725-726 [defendant forfeited hearsay objections by failing to object to plaintiff's declaration or to the documents attached to it].)  To the contrary, Vigil responded to Applied Nutrition's factual assertions concerning the clinical studies in Applied Nutrition's separate statement of undisputed material facts in support of its motion by conceding the assertions were "undisputed," and added the statements were incomplete, and the doses of the ingredients in the studies were higher than those found in Libido-Max.

Vigil also does not support with reasoned argument or citation to authority his contention that Applied Nutrition's failure to provide expert testimony itself prevented it from shifting the burden.  Therefore, we may treat the contention as forfeited and pass on it without consideration.  (*City of Crescent City v. Reddy* (2017) 9 Cal.App.5th 458, 463-464; *Salas v. California Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074.)  Even if Vigil had not forfeited this contention, in the face of Vigil's false advertising claim, Applied Nutrition was not obligated to submit evidence substantiating the challenged advertising.  (*King Bio*, *supra*, 107 Cal.App.4th at pp. 1345-1346.)

In any event, as discussed above, in support of Libido-Max's advertised claims, Applied Nutrition did present evidence to the court by way of its counsel's declaration to which were attached clinical studies, Vigil's and Dr. Gurley's deposition testimony and Vigil's written responses to discovery, and testimonials from satisfied Libido-Max users.  On appeal, Vigil does not contest the admissibility of the clinical studies, the testimonials, or generally

20

Applied Nutrition's counsel's declaration. In fact, Vigil relies upon certain of the studies in contending his expert's reliance on them in offering his opinions created triable issues of material fact. The trial court in the instant case expressly stated it found Applied Nutrition had met its initial burden of production sufficiently to shift the burden to Vigil. We agree.

> b. *Vigil Did Not Satisfy His Burden of Establishing a Triable Issue of Material Fact*

As Applied Nutrition asserts, once it met its burden, for Vigil to defeat its summary judgment motion, Vigil had to affirmatively establish that Applied Nutrition's challenged advertising was false to a significant portion of the general public. (*Lavie v. Procter & Gamble Co.* (2003) 105 Cal.App.4th 496, 508.) Without Dr. Gurley's opinion, Vigil had no evidence to offer in this regard.

In his opening brief on appeal, Vigil contends the motion for summary judgment should not have been granted, but he improperly invokes Dr. Gurley's opinion in support of that argument. As we have concluded the court properly sustained Applied Nutrition's objections to Dr. Gurley's testimony, Vigil cannot utilize such testimony to contend in this appeal that the grant of summary judgment was improper. (See Code Civ. Proc., § 437c, subd. (c) ["In determining if the papers show that there are no triable issues as to any material fact, the court shall consider all of the evidence set forth in the papers, *except the evidence to which objections have been made and sustained by the court. . . .*" (italics added)].)

In addition to Dr. Gurley's opinion, Vigil alludes to his "own experience in consuming the product" as evidence that Libido-

21

Max's ingredients did not provide the advertised benefits, and he contends that is sufficient to create a triable issue of material fact. He maintains the limited anecdotal evidence he offered bolsters the testing and scientific literature upon which Dr. Gurley relied. Libido-Max's effect on Vigil alone, however, is not tantamount to proof that it cannot fulfill its advertised claims to consumers generally. The fact Vigil did not present testimony from others to counteract Applied Nutrition's submission of favorable customer testimonials is also telling.

Again, as Dr. Gurley's opinion, and the basis for it, was not admitted, Vigil's subjective evaluation, by itself, that the product did not work for him is insufficient to establish the falsity of Applied Nutrition's advertising claims. (See *Hill v. Roll International Corporation* 195 Cal.App.4th 1295 (2011) [in claims brought under California's Unfair Competition Law, False Advertising Law, and Consumers Legal Remedies Act, plaintiff did not satisfy the "reasonable consumer standard" and could not get past a demurrer by only claiming she was misled]; *Aloudi v. Intramedic Research Group, LLC* (N.D. Cal. July 9, 2015) 2015 WL 4148381, at *5 [court found a bald claim that a weight loss product did not work as advertised or did not provide any of the promised benefits is insufficient to state a claim for false advertising]; *Eckler v. Wal-Mart Stores, Inc.* (S.D. Cal. Nov. 1, 2012) 2012 WL 5382218, at *9, fn. 2 [court determined only scientific testing could address false advertising claims concerning a supplement providing joint relief when a number of variables may influence the health and comfort of joints].)

In a false advertising case, "[t]he falsity of the advertising claims may be established by testing, scientific literature, or anecdotal evidence." (*King Bio*, *supra*, 107 Cal.App.4th at

p. 1348.) Vigil did not establish falsity because Dr. Gurley did no testing with respect to the Libido-Max product generally or any of its ingredients; the scientific literature upon which Dr. Gurley relied did not support his opinion; and anecdotal evidence that amounts to nothing more than "the product did not work" is not sufficient to establish an advertised claim is false.

On summary judgment, Applied Nutrition shifted the burden to Vigil and demonstrated Vigil could not prove falsity because he did not possess evidence sufficient to establish Applied Nutrition's advertising was false and misleading. Vigil did not meet his burden of establishing a triable issue of material fact. Consequently, the court did not err in granting summary judgment in Applied Nutrition's favor.

## DISPOSITION

The orders excluding Dr. Gurley's testimony and granting Applied Nutrition's motion for summary judgment and the judgment are affirmed. Applied Nutrition is to recover its costs on appeal.


RICHARDSON, J.*


We concur:



SEGAL, Acting P. J.         FEUER, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

23